**Larry KIND, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1717.

District of Columbia Court of Appeals.

Argued Jan. 24, 1986.
Decided July 30, 1987.

Carol S. Blumenthal, Washington, D.C., appointed by this court, for appellant.

Daniel S. Friedman, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Harriet J. McFaul, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, ROGERS and STEADMAN, Associate Judges.

PER CURIAM:

■ Larry Kind appeals his conviction for possession of a prohibited weapon, namely, a knife, with intent to use it unlawfully against another person.[1] He asserts that the trial judge committed reversible error in failing to instruct the jury that the knife had to have a blade longer than three inches to qualify as a prohibited weapon within D.C.Code § 22–3214(b) (1981), the provision under which Kind was convicted.[2] Case law in this jurisdiction, binding upon us as a division,[3] establishes that the failure to instruct the jury on every essential element of the crime is per se reversible "plain error," notwithstanding a defendant's failure to object to the instructions as given, *Byrd v. United States*, 119 U.S.App. D.C. 360, 342 F.2d 939 (1965),[4] just as an instruction to the jury, made without objection, removing from its consideration an essential element of the crime requires reversal. *Minor v. United States*, 475 A.2d 414, 416 (D.C.1984). The Sixth Amendment right to a trial by jury is the policy underpinning of each of these cases. We do not read recent decisions dealing with "harmless error" analysis, *see, e.g., Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), as directly modifying the cited cases. *See Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987) (failure to instruct on essential element of of-

---

1. He was also convicted of assault and destruction of property. His appeal asserts no error in the former conviction. With respect to the latter, his only argument is insufficiency of the evidence. *See* note 6 *infra*.

2. That section reads:
   No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon.
   A knife with a blade shorter than three inches arguably could qualify under the catch-all provision "other dangerous weapon", but the government did not present its case on that theory.

Furthermore, the trial court gave no instructions concerning a "dangerous weapon," but rather simply stated that all the government need show was first "the defendant possessed a knife, and second, at the time he possessed the knife he had the specific intent to use it unlawfully against any other—against another person." Defendant made no objection to this charge. *See* Super.Ct.Crim.R. 30.

3. *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

4. *See also United States v. Gaither*, 142 U.S.App. D.C. 234, 236, 440 F.2d 262, 264 (1971); *Jackson v. United States*, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965).

fense mandates reversal, even under *Rose v. Clark* analysis).[5]

The government relies on *McIntyre v. United States*, 283 A.2d 814 (D.C.1971), a case in which the trial judge refused to let the appellant measure the knife in court. However, that was a bench trial and did not involve Sixth Amendment considerations. We are also cited to *Hall v. United States*, 383 A.2d 1086 (D.C.1978) and *United States v. Gilbert*, 140 U.S.App.D.C. 66, 433 F.2d 1172 (1970). Those cases held that "[w]hether lack of authority is considered a separate element of the offense of forgery or a part of the element of falsity, the jury must be advised that without proof of it the prosecution may not succeed," *Hall, supra,* 383 A.2d at 1090, but deemed the trial court's failure to so instruct to be harmless error. We simply cannot say that "lack of authority" in the context of a forgery charge bears the same element of centrality as the requirement in the case before us of knife length, which is part of the statutory definition of the crime itself.

Accordingly, the conviction for possession of a prohibited weapon is reversed and the case is remanded for a new trial on the charge. The remaining convictions are affirmed.[6]

*So ordered.*

MACK, Associate Judge, concurring:

I join fully in the opinion of the court. However, I also take this opportunity to further emphasize the primary importance of trial by jury in our criminal justice system. Although from one perspective a knife blade may seem small, the principle at stake here is actually very large indeed. It concerns the respective roles of trial and appellate courts and, much more funda-

mentally, Larry Kind's Sixth Amendment right to trial by jury on *every* element of the crime which he is charged. Our obligation to honor that constitutional right requires reversal of Kind's conviction for possession of a prohibited weapon.

One who possesses, with unlawful intent, a "knife with a blade longer than 3 inches" is guilty of possession of a prohibited weapon. D.C.Code § 22–3214(b) (1981). The length of the blade is an element of this offense and it must, therefore, be proven beyond a reasonable doubt. It is the factfinder, in this case a jury, who has the grave responsibility of deciding whether each ingredient of the crime has been established to the requisite degree of certainty. Because the trial court erroneously failed to instruct that the knife was required to have a blade longer than three inches, Kind's jury was completely unaware that the length of the blade was an element of the crime. It cannot be suggested—nor has it been—that when the jurors viewed the knife they made any finding as to the length of its blade before reaching their guilty verdict. The absence of that finding leaves Kind's conviction for possession of a prohibited weapon fatally flawed.

Defense counsel has refused to stipulate to the length of the blade. In an attempt to remedy the flaw, the government has included the knife as part of the record submitted to this court. No matter how tempting (in the interest of judicial economy) the suggestion may be, we cannot accede to the government's request that we measure the knife and find, as a matter of fact, that the blade is over three inches long. Measurement for that purpose would confuse the respective roles of a trial court and an appellate court. The

---

**5.** The government introduced into evidence a knife recovered after Kind's arrest from the back floorboard of the car in which the assault took place. Testimony of Kind at the trial can be read to indicate his acknowledgment that that was the knife involved in the incident. (Kind's defense was that the woman involved in the incident was the one who originally had the knife and that he was struggling to remove the knife from her.) The knife is in the record on appeal and in fact has a blade in excess of three inches. However, under our case law, it was

for the jury to determine whether this knife was in fact the knife possessed by Kind and whether it met the statutory requirement.

**6.** Kind also argues on appeal that even with a correct instruction, the evidence presented was insufficient to support the conviction. He makes the same argument with respect to his conviction of destruction of property. These assertions are without merit.

trial court is the exclusive forum for resolving issues of fact. Our role is that of deciding whether the relevant law was correctly applied. It would be a perilous exercise for an appellate court to engage in factfinding.

Thus an insurmountable barrier, in the way of the government's invitation, is a basic constitutional principle. The right to trial by jury is twice mentioned in the Constitution. Article Three provides that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." U.S. CONST. art. III, § 2, cl. 3. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." *Id.* amend. VI; *see also* D.C.Code § 16–705 (1981).[1] These provisions are of profound significance:

> [T]he jury trial provisions in the Federal and State constitutions reflect a fundamental decision about the exercise of official power—*a reluctance to entrust plenary powers over the citizen to one judge or to a group of judges.* Fear of unchecked power, so typical of our State and Federal governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence.

*Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968) (emphasis added).

The Constitution embodies the proposition that "trial by jury in criminal cases is fundamental to the American scheme of justice." *Id.* at 149, 88 S.Ct. at 1447. Under that scheme, the judge explains the elements of the crime, and the jury then decides whether those elements have been satisfied to the required degree of certainty. *Patton v. United States,* 281 U.S. 276, 288, 50 S.Ct. 253, 254, 74 L.Ed. 854 (1930). Findings of fact on each and every element of the charged offense are for the jury—

and for the jury alone—to make. *Sandstrom v. Montana,* 442 U.S. 510, 520, 523, 99 S.Ct. 2450, 2457, 2458, 61 L.Ed.2d 39 (1979); *see also Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985); *United States v. United States Gypsum Co.,* 438 U.S. 422, 446, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977); *Watts v. United States,* 362 A.2d 706, 714 (D.C.1976) (en banc) (Fickling, J., dissenting); 3 WHARTON'S CRIMINAL PROCEDURE § 520 at 429 (12th ed. 1975).

This fundamental distinction between the respective roles of judge and jury can never be ignored. Basic constitutional principles disabuse us of any notion that we can simply measure the knife, for the purpose of finding facts, at this point:

> However clear the proof may be, or however incontrovertible may seem to the judge to be the [required factual element], the question of [fact] can never be ruled on as a question of law, but must always be submitted to the jury. Jurors may be perverse; the ends of justice may be defeated by unrighteous verdicts, but so long as the functions of the judge and jury are distinct, the one responding to the law, the other to the facts, neither can invade the province of the other without destroying the significance of trial by court and jury....

*Morissette v. United States,* 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952) (quoting *People v. Flack,* 125 N.Y. 324, 334, 26 N.E. 267, 270 (1891)).

It is of no moment, therefore, that the length of the blade may leave little room for rational argument. Jurors do not have to be coldly rational. Under the doctrine of jury nullification, if the jury chose to say that a three and a half inch blade was shorter than three inches, this court would

---

1. That section provides, in relevant part:
   (a) In a criminal case tried in the Superior Court in which, according to the Constitution of the United States, the defendant is entitled to a jury trial, *the trial shall be by jury,* unless the defendant in open court expressly waives trial by jury and requests trial by the court, and the court and the prosecuting officer consent thereto. In the case of a trial without a jury, the trial shall be by a single judge, whose verdict shall have the same force and effect as that of a jury. [Emphasis added.]

have no power to overturn its verdict of not guilty. *Horning v. District of Columbia*, 254 U.S. 135, 139, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920) ("the jury has the power to bring in a verdict [of not guilty] in the teeth of both law and facts"). Any usurpation of roles would be as much a threat to the innocent as it would to the guilty. "[T]he question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials...." *Bollenbach v. United States*, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946); *see also United States v. Hayward*, 136 U.S.App.D.C. 300, 302, 420 F.2d 142, 144 (1969).

In support of its appellate factfinding invitation, the government cites a case where no such activity took place. In *McIntyre v. United States*, 283 A.2d 814 (D.C.1971), the defendant was convicted— after a bench trial, not after a jury trial— of possessing a prohibited weapon. Trying the case without a jury at the request of the accused, the trial judge in that case properly carried out the otherwise separate functions of identifying the relevant law and finding the relevant facts. The trial judge knew that a three inch blade was an element of the crime. Hence, his factual finding that this essential requirement had been met was contained in the guilty verdict. Assuming that this court did measure the blade on appeal in *McIntyre*, we still did not make a required factual finding which had never been made in the trial court—we merely confirmed that a factual finding *already* made by the true factfinder was legally supported by the evidence in the record. *Id.* at 815–16.

Here, in contrast, Kind was tried before a jury, so that the roles of judge and factfinder were entrusted to different hands. The trial court erroneously failed to instruct the jury on the three inch blade requirement, with the result that the jury, as factfinder, was completely unaware of the need for its guilty verdict to include a finding on that crucial issue. Indeed, as of today, no finding as to the length of the blade has been made. This case is unlike *McIntyre*.

It should be noted that the trial court's instructional error automatically constitutes plain error requiring reversal. The constitutional problem we have identified is the inevitable consequence of the trial court's failure to communicate to the jury that the length of the blade is an element of the crime which the jury must determine for itself before it could decide guilt or innocence. As we recognized in *Minor v. United States*, 475 A.2d 414, 416 (D.C. 1984), Kind's failure to object to the inadequacy of the jury instructions during trial does not mitigate the extent of that error, where the effect of the inadequate instructions was to remove a critical issue of fact from the consideration of the jury. In *Minor*, the defendants were convicted of receiving stolen property. The trial court had directed the jury that the value of the stolen goods exceeded the $100 required to convict. *Id.* at 416. In reversing, we pointed out that

> [j]ust as a directed criminal verdict is proscribed, so a partial directed verdict, regarding an essential element of the crime, is similarly prohibited. Here, the value element of the crimes charged was removed from the jury's province. However, after *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), there should be no doubt that each element of a crime should be proven, to a jury, beyond a reasonable doubt, by the government.

*Minor v. United States, supra*, 475 A.2d at 416 (additional citations omitted); *see also Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) ("Due process commands that no man [or woman] shall lose his [or her] liberty unless the Government has borne the burden of ... convincing the factfinder of his [or her] guilt"); *Chambers v. Florida*, 309 U.S. 227, 237, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940) ("The determination to preserve an accused's right to procedural due process sprang in large part from knowledge of the historical truth that the rights and liberties of people accused of crime could not be safely entrusted to secret inquisitorial processes").

On this issue, the government cites two cases for the proposition that failure to instruct the jury on an essential element of the crime does not "inevitably" constitute plain error. *See Hall v. United States,* 383 A.2d 1086, 1090 (D.C.1978); *United States v. Gilbert,* 140 U.S.App.D.C. 66, 67, 433 F.2d 1172, 1173 (1970) (per curiam). It does not follow from these decisions that the instructional error in Kind's trial was not plain error. In my view, the failure at trial to instruct the jury on an essential element of the crime can *never* be considered harmless. *See Hoover v. Garfield Heights Municipal Court,* 802 F.2d 168, 174–78 (6th Cir.1986) (citing cases), *cert. denied,* —— U.S. ——, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987).[2]

"Despite the strong interests that support the harmless-error doctrine, the Court in *Chapman* [*v. California,* 386 U.S. 18, 23, n. 8, 87 S.Ct. 824, 828, n. 8, 17 L.Ed.2d 705 (1967),] recognized that some constitutional errors require reversal without regard to the evidence in the particular case. This limitation recognizes that some errors necessarily render a trial fundamentally unfair." *Rose v. Clark, supra,* 106 S.Ct. at 3106 (additional citations omitted); *accord, Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674 (1986). Automatic reversal is required by constitutional errors which deny the basic protections without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Rose v. Clark, supra,* 106 S.Ct. at 3106. Automatic reversal is also required by "violations of certain constitutional rights [which] are not, and should not be, subject to harmless error analysis because those rights protect important values that are unrelated to the truth-seeking function of the trial." *Id.* 106 S.Ct. at 3111 (Stevens, J., concurring).

Community participation in the determination of guilt or innocence is one important, indeed fundamental, value enshrined in our Constitution. Thus, where the right to trial by jury on every element of the crime is denied, "the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judge[s] the defendant guilty." *Rose v. Clark, supra,* 106 S.Ct. at 3106 (reversal automatically required in such circumstances without regard to the evidence in the particular case). "Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime." *Cabana v. Bullock, supra* note 2, 106 S.Ct. at 696.

Failure to instruct on an essential element of the crime invites the jury to return a guilty verdict without ever making the required determination that all of the facts

---

**2.** To the extent that *Hall* and *Gilbert* support the application of harmless error doctrine to instructional errors of this magnitude, those cases were wrongly decided. They are incompatible with our decision in *Minor v. United States, supra,* 475 A.2d 414. They conflict with a multitude of binding cases holding that failure to instruct on an element of the crime requires reversal. *E.g., Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986); *Connecticut v. Johnson,* 460 U.S. 73, 86, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1984) (plurality opinion); *id.* at 95 n. 3, 103 S.Ct. at 982 n. 3 (Powell, J., dissenting); *United Brotherhood of Carpenters & Joiners v. United States,* 330 U.S. 395, 408–09, 67 S.Ct. 775, 782–83, 91 L.Ed. 973 (1947); *Screws v. United States,* 325 U.S. 91, 106–07, 65 S.Ct. 1031, 1037–38, 89 L.Ed. 1495 (1945); *Liles v. United States,* 129 U.S.App.D.C. 268, 269, 393 F.2d 669, 670 (1967); *Jackson v. United States,* 121 U.S.App.D.C. 160, 161–62, 348 F.2d 772, 773–74 (1965) (per curiam); *Byrd v. United States,* 119 U.S.App.D.C. 360, 361–63, 342 F.2d 939, 940–42 (1965). They conflict with the plain language of the Sixth Amendment and the right to trial by jury it enshrines. And, finally, they conflict with decisions of the Supreme Court interpreting that provision and articulating due process rights. *E.g., Sandstrom v. Montana, supra,* 442 U.S. at 520–25, 99 S.Ct. at 2457–59; *United States v. United States Gypsum Co., supra,* 438 U.S. at 446, 98 S.Ct. at 2878; *Francis v. Franklin, supra,* 471 U.S. at 313–14, 105 S.Ct. at 1970–71; *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 572–73, 97 S.Ct. at 1355; *Duncan v. Louisiana, supra,* 391 U.S. at 149–58, 88 S.Ct. at 1447–52; *Morissette v. United States, supra,* 342 U.S. at 274, 72 S.Ct. at 255; *Bollenbach v. United States, supra,* 326 U.S. at 614–15, 66 S.Ct. at 405–06; *Callan v. Wilson,* 127 U.S. 540, 557, 8 S.Ct. 1301, 1307, 32 L.Ed. 223 (1888).

comprising the offense have been proven beyond a reasonable doubt. An instructional error of that magnitude unavoidably deprives the accused of his or her Sixth Amendment right to trial by jury on every element of the crime charged. To hold that the instructional error is not plain error requiring reversal would be to condone—indeed to participate in—a constitutional violation. This is so because the conviction could be sustained on appeal only by the appellate court, rather than the true factfinder, itself supplying the critical finding of fact never made in the trial court. *See, e.g., Hall v. United States, supra,* 383 A.2d at 1090 ("the circumstantial evidence against appellant was strong and the lack of authority was clear from the record"); *United States v. Gilbert, supra,* 140 U.S. App.D.C. at 67, 433 F.2d at 1173 ("In view of the overwhelming evidence against appellant, however, in the circumstances of this case we find the [failure to instruct that lack of authority was required] harmless").

An appellate court has no more right than the trial judge to transgress its role of identifying and ensuring compliance with the relevant law. *Rose v. Clark, supra* note 2, 106 S.Ct. at 3114 (Blackmun, J., dissenting) ("The Constitution does not allow an appellate court to arrogate to itself a function that the defendant, under the Sixth Amendment, can demand be performed by a jury"); *Arnold v. United States,* 358 A.2d 335, 347 (D.C.1976) (en banc) (Fickling, J., dissenting) ("It is not the function of an appellate court to determine guilt or innocence upon its own review of the record. That judgment is reserved exclusively for the jury, and the court cannot substitute its own subjective evaluation of the record for that of the jury"). When an appellate court does transgress its role, and finds facts, it invades the rightful province of the jury. The members of this court are sworn to act as jurists, not as jurors, and must strictly confine themselves within the bounds of their appointment. Because of the importance of trial by jury in our Bill of Rights, this court is absolutely forbidden from "substitut[ing] the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process might be." *Bollenbach v. United States, supra,* 326 U.S. at 615, 66 S.Ct. at 406. Quite simply, "[a] judgment of conviction, not based upon a verdict of guilty by a jury, is void." *Callan v. Wilson, supra,* 127 U.S. at 557, 8 S.Ct. at 1307.

I add one final comment. Having determined that reversal is required, we have been required to consider whether Kind may be subjected to a new trial on the same charge. Under the Double Jeopardy Clause, remand for retrial is forbidden where the evidence presented in the original trial was insufficient to convict. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). In addition to challenging the lack of a vital jury instruction, Kind has questioned the sufficiency of the evidence presented against him at trial. If his contention had merit, there would be no new trial because no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend V. In concluding that the case against Kind on the charge of possessing a prohibited weapon was sufficient to permit a reasonable mind to conclude guilt beyond a reasonable doubt, we have been obliged to examine the evidence on every element of the offense, including the length of the knife blade. Our evidentiary evaluation, however, was not for the purpose of supplying a factual finding necessary for a conviction, but solely to ensure that Kind's rights under the Double Jeopardy Clause are fully respected. Ultimately, measurement of the knife blade for the purpose of determining guilt or innocence remains entirely within the province of the jury. If asked, a reviewing court must always assure itself that retrial is constitutionally permitted under the Double Jeopardy Clause, and if we had not done so here, our remand for a new trial would be improper.